UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VONSHELIAH LOYD,

                                 Case No. No.  17-12589

              Plaintiff,          District Judge Gershwin A. Drain

v.                            Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Vonsheliah Loyd ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act.  Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #24] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

## I.  PROCEDURAL HISTORY

In her most recent application for benefits, Plaintiff applied for DIB on May 21, 2014 alleging disability as of January 1, 2009 (Tr. 276), and in a separate application for SSI on July 17, 2014, alleged disability as of September 1, 2010[1] (Tr. 278).  Upon initial denial of the current claim, Plaintiff requested an administrative hearing, held on March 10, 2016 in Flint, Michigan before Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 81). Plaintiff, represented by attorney Jason Mohler, testified, (Tr. 88-109), as did vocational expert ("VE") Pauline McEachin (Tr. 110-115).  On June 15, 2016, ALJ Sobrino found Plaintiff not disabled (Tr. 14-27).

On June 7, 2017, the Appeals Council declined to review the administrative decision (Tr. 2-5).  Plaintiff filed suit in this Court on August 9, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born, April 16, 1970, was 46 at the time of the administrative decision (Tr. 27, 276).  She completed one year of college and worked previously as a cashier, housekeeper, and retail stocker (Tr. 319-320).  She alleges disability due to fibromyalgia, a stroke (2006), diabetes, hand/wrist problems, chronic spasms, insomnia, rheumatoid arthritis, nerve pain, depression, and anxiety (Tr. 318).

---

[1]At the hearing, Plaintiff, through counsel, amended her alleged onset of disability date to May 1, 2013 (Tr. 84).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived with her son in an apartment in Flint, Michigan (Tr. 88). She was unable to work due to right leg pain, a neurological problem of the foot, back pain, and right hand pain (Tr. 89). Due to back pain, sitting for long periods created discomfort (Tr. 89). She also experienced left hand pain which caused problems holding a cane (Tr. 89). She always used the cane for walking (Tr. 89, 98). She was unable to sit, stand, or walk for more than 15 minutes at a time (Tr. 89-90). She experienced pain climbing stairs (Tr. 98). Her doctor had prescribed both the use of a cane and a right wrist brace (Tr. 89-90). She had been using the wrist brace for two years (Tr. 90, 100-100). She experienced gripping problems (Tr. 101). She was unable to hold a can of soda with her right hand (Tr. 101). Bending, stooping, and reaching caused back pain (Tr. 91). She was unable to kneel (Tr. 99). She experienced both throbbing pain and numbness of the knees and ankles (Tr. 99). She experienced frequent falls due to her physical limitations (Tr. 91). She was unable to walk on uneven surfaces (Tr. 100). She had been prescribed a right leg brace and used "diabetic" shoes (Tr. 100). She was unable to cook, clean, or perform laundry chores or yard work (Tr. 92-93). She required the use of a motorized cart while grocery shopping (Tr. 92, 97). Her sister helped her bathe and dress (Tr. 92-93, 102). Her independent activities were limited to washing her face and feeding herself with her left hand (Tr. 102). She did not have a current driver's license and relied on her sister for transportation (Tr. 93).

She experienced the side effect of sleepiness from prescribed medication (Tr. 93). Due to pain, she reclined two or three times each day for 90 minutes (Tr. 103). She had been taking insulin for the condition of diabetes for the six months prior to the hearing and checked her blood sugar levels regularly (Tr. 94). She had not received mental health treatment since the May, 2013 alleged onset of disability (Tr. 95). The previous November she was taken to the hospital by ambulance when her back "locked up" (Tr. 95). She had sought emergency treatment on other occasions for back problems (Tr. 95).

Plaintiff stood 5' 2" and weighed 220 pounds (Tr. 96). On a scale of one to ten, she typically experienced level "six to eight" back and leg pain (Tr. 104). She enjoyed watching cooking shows but would typically fall asleep after watching for half an hour, or, required a position change (Tr. 105). Due to foot and leg swelling, she was required to elevate her legs for two hours twice a day (Tr. 106). She took medication for anxiety and depression (Tr. 107). She took all prescribed medication as directed (Tr. 107-108). Her condition had worsened since December, 2012 (Tr. 108). She was not sure whether she had undergone physical therapy during the relevant period (Tr. 109).

### B. Medical Records

### 1. Treating Records[2]

October, 2001 records note a diagnosis of moderate depression (Tr. 431). August, 2007 records note Plaintiff's report of depression and cannabis abuse (Tr. 373). She demonstrated full strength in all extremities except for muscle weakness in the right lower extremity due to either "sub-optimal effort" or foot weakness (Tr. 375). She exhibited a normal gait (Tr. 375). In June, 2009, Plaintiff reported right leg and hip pain, noting that physical therapy had not improved the condition (Tr. 374). In August, 2009, treating physician Ashish Sarin, M.D. found that due to polyneuropathy, cervicalgia, foot numbness and pain, medication side effects of stomach aches, depression, anxiety, bipolar disorder, and Post Traumatic Stress Disorder ("PTSD"), Plaintiff was unable to work (Tr. 368-369). He found that Plaintiff's concentrational problems would interfere with her work (Tr. 369). He found that she was unable to sit for more than one hour in an eight-hour workday and was incapable of standing more than five minutes at a time (Tr. 369). He found that Plaintiff needed work allowing her to walk every 10 minutes for a total of five minutes and required a sit/stand option and hourly breaks to lie down or sit quietly (Tr. 370). He found that Plaintiff was required to lift her legs at or above heart level (Tr. 370). He found that she was limited to less than 10 pounds lifting on a rare basis, was unable to perform any postural

---

[2]Records created prior to the alleged onset of disability date of May 1, 2013 are included for background purposes only.

activity except climbing stairs on a rare basis, and could perform less than "repetitive" manipulative activity (Tr. 370-371). He precluded Plaintiff from work involving extreme cold and excessive humidity (Tr. 372).

A May, 2013 EMG showed severe polyneuropathy of the right lower extremity (Tr. 384). Neurologist Faisal I. Ahmad, M.D. prescribed Neurontin (Tr. 385). July, 2013 records by Dr. Ahmad note that a recent MRI of the lumbar spine was normal (Tr. 383, 386). He found that Plaintiff was unable to work due to severe lower extremity peripheral polyneuropathy (Tr. 383). The same month, nerve conduction/EMG studies of the lower extremities by Devinderjit Singh Bhangu, M.D. showed wholly normal results (Tr. 415, 422). In August, 2013, Dr. Sarin noted that a sensory exam of the right foot showed diminished tactile sensation but that neurological testing was unremarkable (Tr. 411). Plaintiff demonstrated full muscle strength (Tr. 411). An October, 2013 brainstem auditory evoked response test and an EEG were both normal (Tr. 380-381). The same month, Dr. Ahmad opted to keep Plaintiff on Prozac due to her "flat" affect (Tr. 382). He reiterated that she was unable to work (Tr. 382). Dr. Sarin's records from the next month note that Plaintiff denied extremity tingling (Tr. 409). Dr. Sarin's December, 2013 records note full muscle strength except for right hand weakness (Tr. 406). Plaintiff did not exhibit signs of anxiety or depression (Tr. 405).

In January, 2014, Dr. Bhangu, noting "give way" weakness of the right upper extremity, prescribed wrist splints and restricted Plaintiff from repetitive hand and wrist activity (Tr. 417).    He noted unremarkable concentrational abilities and a normal gait (Tr. 417). Nerve conduction/EMG studies showing mild abnormalities were consistent with right Carpal Tunnel Syndrome ("CTS") (Tr. 413).  Emergency room records from May, 2014 state that Plaintiff sought treatment for severe gastric pain (Tr. 471).  Dr. Sarin's April, 2014 records note that Plaintiff appeared depressed "but not agitated and not labile" (Tr. 403).  She exhibited normal judgment (Tr. 403).  In May, 2014, Plaintiff sought emergency treatment for difficulty breathing (Tr. 492).  Emergency records state that she demonstrated a full range of motion and no respiratory distress (Tr. 492).  Plaintiff reported a history of tobacco, marijuana, and cocaine use (Tr. 493).  She was diagnosed with bronchitis (Tr. 494).  Dr. Sarin's notes from the same month note an impression of intermittent asthma (Tr. 400).   In June, 2014, Plaintiff again sought emergency treatment for shortness of breath (Tr. 484). Emergency treatment records note no respiratory distress, full orientation, and good strength and range of motion (Tr. 484).  She was diagnosed with bronchitis (Tr. 487).  The same month, Dr. Sarin advised her to continue using a nebulizer "as needed" (Tr. 399).  Plaintiff stated that she did "not want to do any jail time" for "old warrants" because she felt that she would not receive treatment for asthma (Tr. 398, 400).  The same month, Dr. Sarin opined that Plaintiff was unable to sit for more than 10 minutes at a time and was unable to walk (Tr. 437).  He found that Plaintiff would need unspecified breaks over the course of the workday

-7-

(Tr. 437).  He found that she was incapable of all lifting (Tr. 438).  He found that Plaintiff

was a malingerer (Tr. 438).  He found that Plaintiff would be likely to miss more than four

days of work each month and was not capable of full-time work (Tr. 438).  The following

month, Plaintiff denied foot numbness (Tr. 393).  August, 2014 imaging studies of the

lumbar spine were normal (Tr. 419).

In January, 2015, Dr. Sarin opined that due to neck pain and the medication side

effects of dizziness and drowsiness, Plaintiff would require frequent breaks to recline during

the course of the workday (Tr. 444).  He found that she could walk one block and stand or

walk for a total of two hours in an eight-hour day (Tr. 444).  He found that she could sit for

eight hours each workday (Tr. 444).  He found that Plaintiff was limited to lifting/carrying

less than 10 pounds and was capable of manipulative activity for 50 percent of the workday

(Tr. 444).  Physical therapy intake records from the same month note weakness of the right

lower limb and "mild weakness" of the right hand (Tr. 457).  Plaintiff reported that she was

mostly independent in self care but that she fell frequently (Tr. 457).  Tahaj Jamil, M.D.

noted a right foot drop (Tr. 458).  He opined that if Plaintiff started to "ambulat[ed] more

correctly, some of her low back issues [would] resolve over time on their own" (Tr. 458).

Dr. Sarin's July, 2015 records note that Plaintiff did not appear depressed and that her

physical condition was stable (Tr. 452).  The following month, Plaintiff sought emergency

treatment for muscle spasms (Tr. 480). Dr. Sarin's September, 2015 records note mild ankle

tenderness but a normal gait and normal movement and muscle strength in all extremities (Tr.

-8-

455).   October, 2015 records state that Plaintiff was non-compliant with dietary and medication recommendations for the treatment of diabetes (Tr. 448).   Emergency room notes from the following month note Plaintiff's report of chronic back and right leg pain (Tr. 473). Imaging studies of the lumbar spine were unremarkable (Tr. 475).   Imaging studies of the thoracic spine showed "minimal to mild" degenerative disc changes (Tr. 475).   Dr. Sarin's January, 2016 records note a mildly restricted range of neck motion (Tr. 498).   Plaintiff exhibited normal strength in all extremities (Tr. 498).

## 2.  Non-Treating Evidence

In October, 2014, Rom Krauciunas, Ph.D. performed a non-examining review of the medical records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace (Tr. 179-180).   The same month, Glen Douglass, M.D. performed a non-examining review of the records pertaining to Plaintiff's physical conditions, finding that she could lift a maximum of 10 pounds; sit for six hours a day; and stand or walk for two (Tr. 181).   He found that Plaintiff's ability to push and pull in the right upper and lower extremity was limited (Tr. 181).   He limited Plaintiff to occasional postural activity except for a preclusion on the climbing of ladders, ropes, or scaffolds (Tr. 182).   He found that Plaintiff was limited to occasional handling and fingering with the right upper extremity due to wrist swelling, pain, and CTS (Tr. 182).   He found that Plaintiff should avoid concentrated exposures to extreme cold, vibration, and airborne pollutants; and avoid even moderate

-9-

exposure to hazard such as machinery and heights (Tr. 183).

### C. Vocational Testimony

VE Pauline McEachin classified Plaintiff's past work as a housekeeper as exertionally light and unskilled[3] (Tr. 110-111).  The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [A]ssume a person who cannot perform more than sedentary work as that term is applied in the Social Security regulations and in the *Dictionary of Occupational Titles* [("*DOT*")], but the person should not need to climb ladders, ropes or scaffolds, can only occasionally climb stairs or ramps, balance, stoop, kneel or crouch.  The person should not need to crawl.  Assume a limitation to frequent handling, fingering, feeling and reaching.  The person should be able to wear a wrist brace, such as the one Ms. Loyd wears while working, and the person should be able to wear a foot/ankle brace while working.  There should be no exposure to vibration and no need to use leg controls.  There should be no concentrated exposure to respiratory irritants.  The person must avoid hazards such as unprotected heights and moving industrial machinery.  Assume an individual limited to simple, routine, repetitive work activity in a stable work environment and I will define that as work that is not done at a production rate pace, for example, no assembly line work, with only minor changes in the work setting.  There should be only superficial contact with co-workers and supervisors and this person should not

---

3

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

need to do work requiring interaction with the public.  (Tr. 111-112).

The VE found that the above limitations would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the sedentary, unskilled work of a bench assembler (150,000 positions in the national economy); inspector (130,000); and order checker (180,000) (Tr. 112).  She testified that the need to sit and stand alternatively would not change the job numbers (Tr. 112).   She stated likewise that if the individual required a cane to walk, the job numbers would be unchanged (Tr. 112-113).  She stated that the need for more than one unexcused absence each month; the need to be off task for at least 20 percent of the workday; or, the need to elevate the legs to waist level while working would be work preclusive (Tr. 113).

In response to questioning by Plaintiff's counsel, the VE stated that a preclusion on walking on uneven surfaces would not change the job numbers (Tr. 114).

### D.  The ALJ's Decision

The ALJ found that Plaintiff had not worked since the amended alleged onset of disability date of May 1, 2013 (Tr. 16).  Then, citing the medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of "degenerative disc disease, degenerative joint disease, [CTS], polyneuropathy, asthma, obesity, diabetes mellitus, fibromyalgia, and affective disorder, and rule out diagnosis of [PTSD]," but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17).  She found that Plaintiff experienced mild limitation in activities of daily living and moderate

limitation in social functioning and concentration, persistence, or pace (Tr. 18). The ALJ

determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work

with the following additional restrictions:

> [C]laimant can occasionally climb stairs and ramps, balance, stoop, kneel,
> crouch, and crawl. The claimant must avoid hazards such as unprotected
> heights and moving industrial machinery. The claimant from a mental
> standpoint can do simple, routine, and repetitive work activities in a stable
> work environment. The claimant from a mental standpoint can tolerate
> superficial contacts with supervisors and coworkers, but cannot work with the
> general public. The work should not [be] done at a production rate pace (*e.g.*,
> no assembly-line work), and should involve only minor changes in the work
> setting. The claimant is limited to frequent handling, fingering, and feeling,
> and reaching. There should be no exposure to vibration; no use of foot or leg
> controls; and no concentrated exposure to respiratory irritants. The claimant
> should be able to wear wrist braces and a foot ankle brace while working  (Tr.
> 19).

 Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform

her past relevant work, she could perform the exertionally sedentary work of a bench

assembler, inspector, and order checker (Tr. 26, 112).

     The ALJ discounted the allegations of disability, citing the May, 2013 MRI of the

lumbar spine showing normal results (Tr. 20). She noted that despite Dr. Ahmad's July and

October, 2013 opinions that Plaintiff was unable to work, neurological testing results from

July, 2013 were within normal limits (Tr. 21). She found that despite Plaintiff's claims of

disabling polyneuropathy of the lower extremities, July, 2013 EMG studies of the lower

extremities were normal (Tr. 21). The ALJ noted that as of January, 2014, Plaintiff had not

followed Dr. Sarin's advice to use a right wrist splint (Tr. 21). She noted that EMG studies

from the following month showed only mild abnormalities (Tr. 21).

The ALJ cited May, 2014 emergency room records showing a normal range of back and extremity motion and that the following month, Plaintiff denied medication side effects, contrary to the allegations of the side effect of drowsiness (Tr. 21, 23-24).  She noted that Dr. Jamil's January, 2015 records showed a right foot drop due to a 2006 stroke but that Dr. Jamil found that Plaintiff's back problems would "resolve gradually over time on their own" with "correct ambulation" (Tr. 22).  The ALJ cited October, 2015 records noting that Plaintiff had been non-compliant with diet and medication recommendations for diabetes (Tr. 22).  She noted that in December, 2015, Plaintiff denied depression (Tr. 22).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account

whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-14-

# V.  ANALYSIS

## A.  The Relative Weight Accorded the Medical Sources

In her first argument for remand, Plaintiff contends that the ALJ did not provide good reasons for rejecting Dr. Sarin's disability opinions in favor of the findings by non-examining sources. *Plaintiff's Brief,* 14-21, *Docket #17,* Pg ID 581.   Plaintiff argues further that the October, 2014 non-examining findings did not have benefit of the subsequently created treating records.  *Id.*

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, *5 (1996). In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6)

"the specialization of the treating source." *Wilson*, at 544.

Contrary to Plaintiff's claim, the ALJ provided an exhaustive discussion of Dr. Sarin's treating records and his June, 2014 and January, 2015 disability opinions.   The ALJ summarized Dr. Sarin's treating records for the relevant period, noting that the primary care physician provided care for the conditions of diabetes, asthma, fibromyalgia, depression, and residual symptoms of a 2006 stroke  (Tr. 21-23).   She noted that Dr. Sarin prescribed medication and referred Plaintiff for imaging and neurological studies (Tr. 21-22).   The ALJ provided an accurate and detailed summary of Dr. Sarin's June, 2014 and January, 2015 disability opinions (Tr. 24); *see* II.B.1, *above.*

The ALJ then provided a cogent explanation for according "little weight" to Dr. Sarin's opinions (Tr. 24).   She noted that his finding that Plaintiff was incapable of even sedentary work was unsupported by the clinical findings and diagnostic studies (Tr. 24).   She noted that Dr. Sarin acknowledged that his June, 2014 finding that Plaintiff was unable to do *any* walking was based on Plaintiff's allegations of her own limitations rather than the objective findings (Tr. 25).   The ALJ noted that the June, 2014 finding that Plaintiff was unable to perform any walking also contradicted by Dr. Sarin's January, 2015 statement that Plaintiff was capable of walking or standing for two hours in an eight-hour workday (Tr. 25, 437, 444). In the next paragraph, the ALJ cited another source's observation of a normal gait (Tr. 25, 417).

The ALJ's findings are consistent with my own review of the records (including Dr. Sarin's own notes) variously showing a normal gait, good strength and a normal range of motion (Tr. 406, 411, 415, 455, 484, 492, 498).   The imaging studies, including an unremarkable MRI of the lumbar spine, normal nerve conduction/EMG studies of the lower extremities, and only mild abnormalities of the upper right extremity, also undermine Dr. Sarin's findings that the non-exertional limitations precluded a limited range of sedentary work (Tr. 380-381, 383, 413, 415).

Plaintiff's related argument that the ALJ gave inordinate weight to the October, 2014 non-examining findings over the later treating records fares no better.[4]  She is correct that as a rule, "updated" medical records are to be accorded more weight than older ones, *See Brooks v. CSS*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(ALJ adoption of non-examining source's earlier opinion over the more recent examining findings grounds for remand). However, the adoption of the older records over newer ones does not automatically constitute error.  Rather, in the instance that "an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence," the reviewing court "generally require[s] 'some indication that the ALJ at least considered these new facts before

---

[4] While Plaintiff argues that the findings regarding both her physical and mental capabilities by the non-examining sources were improperly adopted, she does not provide any examples of how the non-examining psychological findings mis-stated her mental health problems.  Moreover, the treating records contain multiple observations of a normal affect and good judgment.  Plaintiff's contention that the ALJ erred by declining to order IQ testing is discussed in Section C., *below.*

giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks*, 531 Fed.Appx. at 642 (*citing Blakley v. CSS*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted).

Plaintiff's argument that the ALJ erred by relying on the earlier, non-examining records fails for two reasons. First, the ALJ properly "considered" the subsequently created evidence, devoting almost two pages to the treating records post-dating the non-examining findings (not including the discussion of the January, 2015 opinion evidence) (Tr. 22-24). Second, the later findings do not contradict the ALJ's finding that Plaintiff could perform a limited range of sedentary work. The ALJ not only acknowledged Dr. Jamil's January, 2015 finding that Plaintiff required the use of a right leg brace (Tr. 22), but included the need for a brace in the RFC (Tr. 19). The ALJ noted that Dr. Sarin's July, 2015 finds included observations of normal strength in all extremities (Tr. 22). She noted that Plaintiff denied depression at a December, 2015 examination (Tr. 22). She noted that again in January, 2016, Dr. Sarin observed normal strength in all extremities (Tr. 22-23).

Plaintiff lists a number of the later records that the non-examining sources were not able to review. *Plaintiff's Brief* at 15. Somewhat confusingly, the list contains consists mainly of record excerpts either supporting the ALJ's findings or records wholly irrelevant to the non-disability determination. For example, while Plaintiff notes that the non-examining sources did not review nerve conduction/EMG studies of the lower extremities, a brainstem auditory evoked response test, or an MRI of the lumbar spine, all of those studies were wholly

normal *Id.* (*citing* Tr. 380-381, 386)).   Likewise, the emergency room records cited by Plaintiff contain observations of full strength in all extremities (Tr. 498).   Plaintiff does not explain how the results of a mammogram and chest x-ray (had they been reviewed by the non-examining sources) would have changed the earlier findings. *Plaintiff's Brief* at 15-16.

Because the ALJ's rationale for weighing the medical evidence is supported by substantial evidence and well explained, the ALJ's adoption of the non-examining findings over Dr. Serin's  opinions does not constitute grounds for remand.  *See DeLong v. CSS*, 748 F.3d 723, 726 (6th Cir. 2014)(*citing Ulman v. CSS*, 693 F.3d 709, 713 (6th Cir.2012))(substantial evidence standard "does not permit the court to resolve conflicts in evidence").  Rather, the court "must affirm a decision by the Commissioner as long as 'it is supported by substantial evidence and was made pursuant to proper legal standards.'" *Id.*

### B.  The Manipulative Limitations

Plaintiff argues next that the RFC for frequent handling, fingering, feeling, and reaching stands at odds with Dr. Douglas' October, 2014 non-examining finding that she was limited to *occasional*  handling and fingering.[5] *Plaintiff's Brief* at 21-23 (*citing* Tr. 182)).  She notes that while the ALJ accorded  "significant weight" to Dr. Douglas' October, 2014 non-examining findings, she did not articulate her reasons for declining to follow his finding regarding the ability to handle and finger on an occasional basis.  *Id.* (*citing* Tr. 25)).

---

[5]Dr. Douglas found no limitation in the right upper extremity in reaching or feeling (Tr. 182).  The limitation in feeling as found by Dr. Douglas appears to reflect his finding, stated below, of "diminished tactile sensation" of the right foot (Tr. 182).

In Social Security parlance, occasional activity "means occurring from very little up to one-third of the time" whereas "frequent" refers to activity "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5–6 (January 1, 1983).[6]   The difference between the ability to perform manipulative activity frequently and occasionally is critical in determining the ability to perform unskilled sedentary work.  SSR 96-9p states that "Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." 1996 WL 374185,*8 (July 2, 1996).

Although the ALJ accorded significant weight to the non-examining findings, she did not state why she declined to accept Dr. Douglas' finding that Plaintiff was limited to occasional manipulative activity (Tr. 19, 182).  Nonetheless, the ALJ satisfactorily articulated her reasons for finding that Plaintiff could instead handle, finger, feel, and reach on a frequent basis.

In support of her finding, the ALJ noted that despite Plaintiff's failure to use an earlier prescribed wrist splint, a February, 2014 EMG study showed only mild median neuropathy without radial or ulnar focal neuropathy or other neurological conditions of the upper extremity (Tr. 21).  She cited May, 2014 emergency room records showing good strength and a good range of motion in all extremities (Tr. 21).  She cited Dr. Sarin's July, 2015 finding

_____

[6]The four categories of activity are "constantly" meaning more than two-thirds of the time; frequently, occasionally, and "not present." https://secure.ssa.gov/poms.nsf/lnx/0425001001.  (Last visited August 9, 2018).

of the same (Tr. 22). She noted that a November, 2015 neurological examination was unremarkable (Tr. 22). The ALJ noted that in January, 2016, Dr. Sarin observed "a normal sensory examination" with normal strength in all extremities (Tr. 23). She observed that the condition of right CTS was "treated conservatively with Neurontin and wrist braces" (Tr. 23). She acknowledged Dr. Bhangu's January, 2014 observation of wrist tenderness, puffiness, and poor grip and his recommendation that Plaintiff should avoid repetitive hand/wrist movements and wear wrist splints (Tr. 25). She stated that the RFC's limitation to frequent (as opposed to *constant*) manipulative activity, a preclusion on work involving vibration, and a limitation to work allowing the use of a wrist brace was based on Dr. Bhangu's findings (Tr. 25). The ALJ did not err in drawing from both the treating and non-examining sources in crafting the RFC. *See Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. August 12, 2010)("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC")(*citing* 42 U.S.C. § 423(d)(5)(B)). Because the ALJ's finding that Plaintiff could perform frequent manipulative activity is well supported and thoroughly articulated, a remand on this basis is not warranted.

### C. Further Development of the Record

Finally, Plaintiff argues that the ALJ erred by declining her request for IQ testing. *Plaintiff's Brief* at 24-25. She notes that she made the request on the basis that a consultative examiner in a previous application for benefits found that she experienced "borderline

intellectual functioning."[7]  *Id.* at 24 (*citing* Tr. 18, 430)).   Plaintiff argues that the present transcript contains "numerous examples of [her] diminished capacity" to read, write, understand questions, and concentrate.  *Id.*

 "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917) ("'If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests'"); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)(ALJ authorized but not required to order additional testing "if the existing medical sources do not contain sufficient evidence to make a determination").

The ALJ was well within her discretion in denying the request for intelligence testing. None of the over dozen citations to the record by Plaintiff suggests that she lacks the capacity for a range of unskilled work (Tr. 305-308, 312, 332-335, 337-338, 355-356, 398, 400, 441). Although Plaintiff's handwritten account of her job history and daily activities contains some spelling errors, it is legible, readily understandable, and does not suggest borderline intelligence (Tr. 305-308, 312, 332).  Plaintiff was able to recount her job history fairly accurately and list the conditions forming the basis of the disability application (Tr. 332).

---

[7]Plaintiff notes that the consultative examination records from the prior application is not included in the present transcript.  *Id.*

Significantly, Plaintiff states that she is able to pay bills, count change, handle a saving account, and use a checkbook, remarking that she is "not [dumb]" but rather, "[has a] disability!" (Tr. 335). While she cites Dr. Sarin's finding that she is "a malingerer" in support of the need for intelligence testing, Dr. Sarin's finding does not suggest that she experienced intellectual deficits but that she was disinclined to (rather than disabled from) work (Tr. 441). Likewise, Plaintiff's request for a medical release to avoid a polygraph test in conjunction with an arrest and incarceration for "old warrants," does not support the argument that she experiences substandard intelligence (Tr. 402). Because the record for the relevant period does not contain evidence suggesting borderline intelligence, the ALJ did not err in declining to order additional consultative examination.

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's multiple medical conditions. However, the ALJ's determination that she was capable of performing a significant range of sedentary work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Docket #24] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 10, 2018

-24-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on August 10, 2018, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla                        
Case Manager to the
Honorable R. Steven Whalen