UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VONSHELIAH LOYD,

     Plaintiff,

                          Case No. 2:17-cv-12589
                          HON. GERSHWIN A. DRAIN

vs.


COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____/

## ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION [#26], GRANTING MOTION FOR SUMMARY JUDGMENT [#24], DENYING MOTION FOR SUMMARY JUDGMENT [#17] AND OVERRULING PLAINTIFF'S OBJECTIONS [#27]

## I.    INTRODUCTION

This matter is before the Court on both parties' Cross-Motion for Summary Judgment pertaining to Plaintiff Karen Vonsheliah Loyd's claim for judicial review of Defendant Commissioner of Social Security's denial of her application for disability insurance benefits and disability insurance benefits and supplemental security income.

The matter was referred to Magistrate Judge R. Steven Whalen, who issued a Report and Recommendation on August 10, 2018, recommending that the Court deny Plaintiff's Motion for Summary Judgment, and grant the Defendant

Commissioner's Motion for Summary Judgment. Plaintiff filed an objection to the Report and Recommendation on August 24, 2018, and the Defendant filed a Response to Plaintiff's objections on September 6, 2018. For the reasons discussed blow, the Court will overrule Plaintiff's objections, accept and adopt Magistrate Judge R. Steven Whalen's Report and Recommendation, grant the Defendant's Motion for Summary Judgment, and deny the Plaintiff's Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

28 U.S.C. § 636 sets forth the standard of review used by the Court when examining a report and recommendation. The Court, "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This Court has the power to, "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistration." *Id.*

The district court may affirm, modify or reverse the Commissioner's decision, with or without remand. *See* 42 U.S.C. § 405(g). Under USC § 405(g), the courts have limited power regarding the Commission's decision, "the findings of the commissioner of social security as to any fact if supported by substantial evidence, shall be conclusive." *Id.* Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a

reasonably mind might accept as adequate to support a conclusion." *McClanahan*

*v. Comm'r of Soc. Sec.*, 474 F. 3d 830, 833 (6th Cir. 2006) (quoting *Besaw v. Sec'y*

*of Health and Human Servs.*, 966 F. 2d 1028, 1030 (6th Cir. 1976)). The reason

for this standard:

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision-makers can go either way without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Bowen*, 800 F. 2d 535, 545 (6th Cir. 1986)(citing *Baker v. Heckler*, 730

F. 2d 1147, 1150 (8th Cir. 1986.)).

**III.    ANALYSIS** In Plaintiff's first objection, she argues that the Magistrate

Judge erred in concluding that the Administrative Law Judge ("ALJ") provided

good reasons for rejecting Plaintiff's treating physician's disability opinions.

The disability opinion of Plaintiff's treating source, Ashish Sarin M.D., is

entitled to "controlling weight" if the following elements are satisfied: (1) it is

"'well-supported by medically acceptable clinical and laboratory diagnostic

techniques'" and (2) it is "not inconsistent with the other substantial evidence in

[the] case record.'" *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

2009). It is error for the ALJ to assign controlling weight to the treating source's

opinion if it does not satisfy these criteria. *Id.*; *see also, e.g., Bogle v. Sullivan*, 998

F.2d 342, 347 (6th Cir. 1993). An ALJ must provide "good reasons" for giving

less than controlling weight to a treating source's opinion. *See Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

Here, the Magistrate Judge correctly concluded that the ALJ's decision for weighing the medical opinion evidence is supported by substantial evidence. The ALJ provided several good reasons for giving "little weight" to Dr. Sarin's opinion. First, the ALJ concluded that Dr. Sarin's disability opinion was not supported by clinical findings and objective diagnostic testing. Rather, at least some of the claimed limitations were "per the patient." The ALJ further noted that Dr. Sarin described Plaintiff as a malingerer, and surmised that it was "possible" that she would need to recline or lie down in excess of the breaks that employers typically permit. Moreover, the ALJ relied on the fact that Dr. Sarin provided inconsistent opinions regarding Plaintiff's limitations. For instance, in a June 2014 functional capacity questionnaire, Dr. Sarin opined that Plaintiff could not sit, stand, sit or walk during an 8-hour work day, and in January 2015, he opined that she could stand and walk for 2 hours and sit for 8 hours during an 8-hour workday.

The ALJ also noted the majority of clinical findings of intact gait, intact sensation and strength, including the findings of Dr. Sarin, who in January of 2016 reported that Plaintiff had a normal sensory examination and normal strength in the upper and lower extremities. Lastly, the ALJ summarized the diagnostic testing including an MRI of the spine that was normal, and a February 2014 EMG

showing mild right carpal tunnel syndrome, as well as the conservative treatment for Plaintiff's peripheral neuropathy and carpal tunnel syndrome.

Plaintiff complains that the Magistrate Judge—like the ALJ—"cherry-picked" the evidence, yet such an argument "is seldom successful because crediting it would require a court to re-weigh the evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). The ALJ has a broad "zone of choice" within which she has "considerable latitude" to weigh evidence "without interference by the courts." *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988); *see also, e.g., McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). Plaintiff has failed to sustain her burden demonstrating that the ALJ acted outside of that zone of choice. Plaintiff's first objection is overruled.

Plaintiff next objects to the finding that the ALJ's conclusion concerning Plaintiff's ability to perform frequent manipulative activity is supported by substantial evidence. The ALJ determined that Plaintiff was capable of sedentary work and due to her carpal tunnel syndrome and neuropathy; she was limited to no more than frequent handling, fingering, feeling, and reaching. The ALJ based her RFC limitation on the diagnostic testing, including an EMG showing only mild carpal tunnel syndrome, as well as consistent examination findings that Plaintiff

had normal strength, motor function range of motion, reflexes, coordination and sensation in her upper extremities.

Moreover, the ALJ noted that she had been prescribed conservative treatment with medication and wrist splints. Plaintiff complains that the ALJ ignored Devinderjit Bhangu M.D.'s opinion advising Plaintiff to avoid repetitive and wrist movements. However, the ALJ expressly acknowledged Dr. Bhangu's opinion and accounted for it in her RFC by including manipulative limitations. The Court cannot conclude that Plaintiff has established her RFC limitation with respect to "frequent handling" is not supported by substantial evidence. This objection is likewise OVERRULED.

Lastly, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ properly developed the record to support the denial of Plaintiff's request for an additional consultative examination concerning her purported borderline intelligence. With respect to consultative examinations, "[i]f the evidence in [the] case record is insufficient or inconsistent, [then the Agency] may need to take additional actions," which "may" include asking a claimant to undergo a consultative examination. 20 C.F.R. §§ 404.1520b(c) (3), 416.920b(c)(3). Plaintiff fails to establish that the evidence in the case record concerning intellectual functioning was insufficient or inconsistent.

Nor has she pointed to any evidence in the record suggesting she possesses mental limitations beyond those restrictions set forth in her RFC. Specifically, the ALJ concluded that Plaintiff was limited to "simple, routine and repetitive work activities," "superficial contacts with supervisors and coworkers" and no contact with the general public along with no production rate pace type work. Because Plaintiff fails to identify any record evidence suggesting that she lacks the intellectual capacity for unskilled work, the ALJ did not abuse her broad discretion by declining to purchase a consultative examination to obtain an IQ test. *Id.*, *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). This objection is also OVERRULED.

42 U.S.C. § 1382 lays out who is eligible to claim disability benefits. Under U.S.C. § 1382:

> An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A). The statute goes on to say:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). 20 C.F.R. § 404.1520 outline the evaluation of a disability with a five-step process:

1) The claimant must show that she is not engaged in substantial gainful activity;
2) The claimant must demonstrate that she has a severe impairment;
3) If the claimant can demonstrate that her impairment meets the durational requirement and meets or equals a listed impairment then a finding of disabled will be made; if the impairment does not meet or equal a listed impairment the analysis continues with the fourth step;
4) The claimant needs to prove that she is incapable of performing work that she has done in the past; if claimant is unable to perform past work then;
5) Factors, including age, education, past work experience and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at the fifth step to establish claimant's ability to do work.

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plummer satisfied the first two stages. Doc. [#19] Pg ID 956. At stage three, Plummer's combination of impairments did not meet or equal one of the listed impairments. *Id.* Because Plummer failed at the third stage, the ALJ goes onto the fourth stage. Next, the ALJ found that Plummer had the residual functional capacity (RFC) to perform light work with the following restrictions:

Can perform occasional postural activities such as kneeling stooping crouching, crawling and climbing ramps and stairs; should not climb ladders, ropes, and scaffolds; should avoid workplace hazards, including unprotected heights and dangerous, moving machinery; is limited to understanding, remembering and carrying out simple, routine and repetitive tasks where the pace of productivity is not dictated by an external source over which the claimant has no control, such as an assembly line or conveyor belt; may make judgments on simple work and respond appropriately to unusual work situations and changes in a routine work setting that [is] repetitive from day to day with few and expected changes; is limited to occasional interactions with supervisors and co-workers; and is limited to no working in teams or in tandem with co-workers; and may have no interactions with the public.

*Id.* At stage four, the ALJ found that Plummer could not perform past relevant work. *Id.* at Pg ID 957. At stage five, the ALJ concluded, based on a vocational expert's testimony, that Plummer retained the ability to perform work, specifically as a production inspector, packer and folder, which exists in significant numbers in the national economy and therefore she was not entitled to disability benefits. *Id.* at Pg ID 963.

Plummer argues that the ALJ erred by 1) Misrepresenting the medical records and incorrectly concluding the Plummer's conditions had substantially improved, and 2) Crafting a factually unclear hypothetical question to the vocational expert. *Id.* at Pg ID 971. Plummer also brings up a variety of other

argument, which the Magistrate Judge addressed in a separate section, and so will I. *Id.*

1. <u>ALJ MISREPRESENTING MEDICAL RECORDS</u>

Plummer argues that the ALJ misinterpreted her medical records in a manner in which inaccurately suggest that her health mental conditions have either resolved or improved over time. *Id.* This argument centers on Plummer's Global Assessment of Function (GAF) score. A GAF test, "measure[s] psychological, social, and occupational function on a continuum of mental health status from 0 to 100, with lower scores indicating more severe mental limitations." *White*, 572 F.3d at 276. The Sixth Circuit has described a GAF score as:

> [A] subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior function) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . or any serious impairment in social occupational or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*Id.* (citing *Edwards v. Barnhart*, 383 F.Supp.2d 920, 924 n. 1 (E.D. Mich. 2005) (internal citations, brackets, and quotation marks omitted). The ALJ gave little weight to Plummer's GAF scores issued in 2013 ranging between thirty-seven and forty-two. *Id.* The ALJ concluded that these opinions, "were assessed during a short period of exacerbation of the claimant's symptoms and they are not representative of the claimant's ongoing normal functionality." *Id.* at Pg ID 971-72. The ALJ goes on to say:

> [I]n light of Plummer's activities of daily living, her presentation during the hearings, and her lack of taking prescribed medications suggest that she is much more capable than the progress notes from the Monroe Community Mental Health Clinic suggest. As such, the GAF scores below 50, which were primarily assessed based on her subjective complaints, are afforded little weight.

*Id.* at Pg ID 972. The Commission also asserts that Plummer's sub-fifty GAF scores were primarily based on her "subjective complaints, and not actual observations." *Id.*

### A. GAF SCORES IN 2013

Over the course of 2013, Plummer received three separate GAF scores. On January 23, 2013, Plummer underwent a consultative psychological examination with Dr. Gayle Brannon in which she was given a GAF score of fifty. *Id.* at Pg ID 973. According to Dr. Brannon, Plummer was found to suffer from:

[A] history of mood and psychiatric issues that . . . ha[ve] prevented her from participating in successful long-term employment. She seems socially appropriate with others in brief encounters. She is able to understand and engage in some simple to some moderate daily living tasks. However, he [sic] gives up easily on projects to due to a low frustration tolerance. She seems motivated to improve her condition and recognizes she needs mental health treatment to function as normal as possible.

*Id.* On September 23 2013, a treating professional issued Plummer a GAF score of thirty-seven and noted passive suicidal intentions at times. *Id.* at Pg ID 974. In December 2013, Plummer went to Monroe Community Mental Health and was issued a GAF score of forty-seven. *Id.* The treating physician summed:

[Plummer] was depressed on a near-constant basis, was agitated, had racing thoughts and nervousness, felt overwhelmed, pulled hair, suffered insomnia, was unable to concentrate, was depressed, had low-energy and fatigue, self-isolated, ad felt hopeless and worthless . . . . She suffered from substantial impairments in her daily life in the areas of managing time, nutrition, alcohol/drug use, leisure activities, productivity, coping skills, and personal hygiene/self-care. *Id.* at Pg ID 976 (internal quotation marks omitted).

While it does appear that the year of 2013 was particularly tumultuous for Plummer[1], Plummer's subsequent GAF scores indicate that her 2013 GAF scores were an accurate portrayal of Plummer's ongoing normal functionality and not an exacerbation caused by external events. On October 2014, Plummer was issue a GAF score of forty-seven, and a month later, she was issued the same score. *Id.* at

---

[1] In September 2013, it was noted that Plummer was temporarily homeless. We do not know for how long. *Id.*

Pg ID 976. While her situation in September did have some effect on her GAF score in September, it is not dramatic enough to disregard the whole year. In fact, Plummer's highest GAF score was in 2013[2]. Therefore, ALJ's reasoning for giving little weight to Plummer's 2013 GAF score is not supported by substantial evidence, since it is an accurate representation of Plummer's mental health disabilities.

### B. GAF SCORES OVERALL

The ALJ also concluded that, "in light of Plummer's activities of daily living, her presentation during the hearings, and her lack of taking prescribed medications suggest that she is more than capable than the progress notes from the Monroe Community Mental Health Clinic suggest. As such, the GAF scores below 50, which were primarily assessed based on her subjective complaints, are afforded little weight." *Id.* at Pg ID 972. Plummer did not bring any objective evidence to support her disability, "[h]owever, [the ALJ] will not reject [her] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on her ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2).

---

[2] Plummer received a GAF score of fifty on January 23, 2013. *Id.* at Pg ID 973.

Plummer argues that she suffers from many mental health issues including: depression, anxiety, psychoses, self-isolation, crying spells, hair pulling, difficulty concentrating, frustration, lack of energy, and feeling of being overwhelmed. Doc. [#19] at Pg ID 978. In assessing a claimant's subjective complaints, "an administrative law judge may properly consider the claimant's credibility, and [the courts] accord great deference to that credibility determination . . . . [And] [t]he claimant's credibility may be properly discounted to a certain degree . . . where an [administrative law judge] finds contradictions among the medical reports, claimant's testimony, and other evidence."). *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Some of the, "[f]actors relevant to your symptoms [in absence of objective evidence], such as pain, which we will consider include:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms . . . ." 20 C.F.R. § 404.1529(c)(3).

*i. Plummer's Daily Activities*

Concerning Plummer's daily activities, the ALJ concluded that, "Plummer's activities of daily living were inconsistent with her complaints of disabling symptoms and limitations." Doc. [#19] Pg ID 988 (internal quotation marks omitted). The ALJ noted that "Plummer was able to care for her children, . . . has no problems caring for her personal needs, and she prepares meals daily . . . washes dishes, does laundry, and cleans her room . . . is able to ride in cars, shop in stores, pay bills, count change, use a computer, and watch television." *Id.* at Pg ID 972. This conclusion is contrary to Plummer's functioning report. The first finding was the Plummer was able to care for her children, however in her report Plummer indicated that she watched her kids once a week, needed help from her cousin, and that her children were self-sufficient. *Id.* at Pg ID 957. The next finding was that Plummer has no problems caring for her personal needs. *Id.* at Pg ID 988. This conclusion directly conflicts of Plummer's report where it states that Plummer would go, "days without changing her clothes or bathing, pulled her hair out, and suffered from constipation. Her cousin sometimes reminded her to shower." *Id.* at Pg ID 957.

Next, it was noted that Plummer prepared meals daily, which again is inconsistent with Plummer's function report. *Id.* Her report claims that she used

to cook all the time, but now makes meals only on a weekly basis because she is limited by her ability to stand and tendency to get frustrated. *Id.* The ALJ also found that Plummer's ability to wash dishes and do laundry was an indication that her symptoms were not as bad as she made them out to be. *Id.* at Pg ID 972. The ALJ ignores Plummer's report where she claims that she could only wash dishes with pauses and the she can only do laundry with the help of her son who carried the basket of clothing. *Id.* at Pg ID 989. The ALJ next cites Plummer's ability to ride in cars and watch television. *Id.* at Pg ID 990. As the Magistrate Judge correctly points out, "any disabled or non-disabled person is probably able to ride in a car. Likewise, the ability to watch television says little about a claimant's functional capacity, as this activity requires almost no effort to perform at all." *Id.*; *see Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."); *see also Williams v. Colvin*, 2014 WL 5396163, at *8 (N.D. Ill. 2014) ("[T]he ALJ gives no explanation as to how the fact of [the claimant's] television-watching habit casts doubt on his credibility to work full time."); *see also Gregory v. Colvin*, 2013 WL 5390019 at *8 (D. Kan. 2013) ("Watching television is not inconsistent with allegations that a person is unable to work.").

*ii. Plummer's Demeanor*

Concerning Plummer's demeanor, "an ALJ's finding based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Social Sec.* 127 F.3d 525, 531 (6th Cir. 1997); *see also Kirk v. Sec'y of Health and Human Serv.*, 677 F.2d 524, 538 (6th Cir. 1981) ("[T]he ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly."). That does not mean that ALJ's finding of Plummer's demeanor is immune from judicial review. *See Harris v. Heckler*, 756 F.2d 431, 436 (6th Cir. 1985) (However, if there is uncontroverted evidence in the record which clearly corroborates a claimant's assertions of pain, it would be wrong for the ALJ to reject this testimony simply because of the claimant's demeanor."); *see also Walters*, 127 F.3d at 531 ("Nevertheless, an ALJ's assessment of the claimant's credibility must be supported by substantial evidence."); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)( "[T]he ALJ is not free to make credibility determinations based solely up on an intangible or intuitive notion about an individual's credibility.") (internal citations and quotation marks omitted). In the Defendant's objections, the

Commissioner failed to address the fact that while the ALJ's determination of credibility is met with great deference, it can still be held under judicial review.

Here, there is substantial evidence the clearly corroborates with claimant's assertions. Even with great deference, the ALJ erroneously disregarded Plummer's credibility, as there is no substantial evidence in support of the ALJ's characterization of Plummer's health and their decision to doubt Plummer's credibility.

### iii. Plummer's Additional Treatment

In addition to the reports that were accompanied by the relevant GAF score, Plummer also received additional treatment where the profession recorded their findings even though they did not issue a GAF score. On September 10, 2013, a psychiatrist, Dr. Kim Horn, treated Plummer. Doc [#19] Pg ID 974. Dr. Horn diagnosed Plummer has having:

> bipolar affective disorder with depression and psychotic behavior, generalized anxiety disorder, trichotillomania (*i.e.* compulsive hair pulling), dependence upon marijuana and cocaine, bipolar affective disorder (in remission as of June 2013), and schizoaffective schizophrenia (active as of June 2013). *Id.*

Dr. Horn also wrote that Plummer had struggled with her mental health symptoms for years. *Id.* (internal quotation marks omitted). In December 2014, it was noted that Plummer continued to suffer from bipolar disorder, severe depression with psychotic behavior, generalized anxiety disorder, and lack of

impulse control. *Id.* at Pg ID 977. Also in February 2015, Plummer was found to have suffered from active bipolar disorder with depression, anxiety disorder, impulse control, schizoaffective disorder with acute exacerbation, cannabis dependence, cocaine dependence (in full remission), and benign intracranial hypertension. *Id.* All of these reports show a consistency that matches with Plummer claims, and therefore it was improper for the ALJ to characterize Plummer's GAF score as primarily the result of Plummer's subjective complaints.

### iv. Plummer's Medication and Appointment History

The ALJ also pointed to the fact that Plummer stopped taking medicine and missed appointments as indications the Plummer's ailments were not as severe as she claimed or that they were improved. *Id.* at Pg ID 979. This court in the past has concluded, "impairments that are controlled by medication are not disabling." *Bryce v. Comm'r of Soc. Sec.*, 2014 WL 1328277 at *5 (E.D. Mich. 2014). In *Bryce* the court found that, "[t]he fact the [p]laintiff's symptoms here often improved with medication and treatment undercuts the claimed severity of his impairments." *Id.* (citing *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 745 (6th Cir. 2012). Here, there is no evidence that Plummer's medication improved her condition, in fact, their ineffectiveness is a reason why she stopped taking them. Doc. [#19] at Pg ID 976. The fact the Plummer did not take her medication and missed appointments does not necessarily mean that Plummer's conditions got

better.  *See White*, 572 F.3d at 283 ("We recognize that the ALJ must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state.  For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself.") (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (listing cases recognizing that a mentally ill person's noncompliance with treatment "can be . . . the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse.") (citations, internal quotation marks, and brackets omitted)).

Plummer first failed to take her medication and attend treatment appointments in September 2013, when she was homeless.  Doc. [#19] at Pg ID 974.  She then missed several appointments in October 2013, which lead the Monroe Community Mental Health to close her case for services for not being on medications since September 2013 and missed appointments.  *Id.* at Pg ID 975.  This statement is a little misleading, because all of the missed appointments were on the same day, October 28, otherwise she attended all of her other scheduled appointments.  *Id.* In October 2014, it was noted that Plummer had not been seen for mental health treatment in seven months, "but this was apparently partly the result of being three times . . . diverted to the emergency room because of uncontrolled high blood pressure."  *Id.* at Pg ID 976 (internal quotation marks and brackets omitted).  In November 2014, it was noted that Plummer became

overwhelmed by the number of her appointments and had difficulty keeping such appointments. *Id.* at Pg ID 976. It was well noted that Plummer had problems with anxiety and feeling overwhelmed, so her missing appointments only illustrates her disabilities more clearly. This is even more evident considering that several treating professionals noted that Plummer was motivated to improve her mental health. *Id.* at Pg ID 979. There is no evidence in the record that indicates that Plummer missed treatment sessions because her mental health condition improved enough where she no longer needed the treatment. *Id.*

In its objections, the Commissioner cites to *Bazzi v. Colvin*, 2015 WL 1245894 (E.D. Mich. 2015). Doc. [#20] at Pg ID 1002. *Bazzi* is distinguishable because the court found that the ALJ's reference to the lack of treatment was not improper because the plaintiff failed to show how his disability prevented him from getting treatment. *Bazzi*, WL 1245894 at 31 ("The Sixth Circuit has warned the ALJ not to place undue reliance on this factor; but even in the case [p]laintiff cites the court did not find the ALJ's analysis was erroneous because the claimant never explained how the disorder lead him to forgo treatment."). Here, Plummer has shown that her physical and mental disabilities caused her to miss appointments. The Commissioner also cites to *Jacques v. Commissioner of Social Security*, 2013 WL 1842404 (E.D. Mich. 2013), and *Klein v. Commissioner of Social Security*, 2010 WL 3476441 (E.D. Mich. 2010). Doc. [#20] at Pg ID 1002-

03.  Both of these cases are distinguishable because in both instances the plaintiff's did not seek the treatment, so a reasonable mind could come to the conclusion that the plaintiff did not seek treatment because he did not need.  Here, Plummer returned to Monroe Community Mental Health to reopen her case for services and was noted to be very motivated in improving her condition showing that the believes she needs treatment.  Doc. [#19] at Pg ID 975.

Examining the totality of the medical records, Plummer's testimony, and the other evidence of record, there is no substantial evidence that supports the ALJ's characterization of Plummer's mental health.

*v. Harmless Error*

Lastly, the Commissioner contends that even if there was a mischaracterization of Plummer's mental health, it was just a harmless error.  Doc. [#20] at Pg ID 1010.  Here, the error is that the ALJ used the mischaracterization of Plummer's mental health in constructing their RFC findings.  Doc. [#19] at Pg ID 980.  This is a procedural error on the part of ALJ under 20 C.F.R. § 416.945 where the ALJ is supposed to asses, "your [RFC] based on all of the relevant evidence in your case record."  20 C.F.R. § 416.945(a)(1).  The RFC was used in the determination that there are jobs available in the national economy, and therefore Plummer was not entitled to disability benefits.  This is not a harmless error.  *See Duncan v. Astrue*, 2012 WL 1188591 at *3 (E.D. Tenn. 2012) ("[A]n

ALJ's procedural error is harmless if [her] ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard.") (citing *Wilson*, 378 F.3d at 547). Here, there is not substantial evidence that support the Commissioner's decision.

### 2. ALJ'S HYPOTHETICAL TO VE

Plummer also argues that the ALJ erred by falsely basing her decision on a flawed hypothetical question to the vocational expert (VE). Doc. [#19] at Pg ID 980. As mentioned above, at the fifth step, "the burden shifted to the [ALJ] to show that plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Human Serv.*, 820 F.2d 777, 779 (6th Cir. 1987). To meet this burden, "there must be a findings supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs. *Id.* (citing *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978) (internal quotation marks omitted). To obtain that substantial evidence, it "may be produced through reliance on the testimony of a [VE] in response to a hypothetical question but only if the question accurately portrays [claimant's] individual physical and mental impairments." *Id.* (internal citations and quotation marks omitted); *see also O'Banner*, 587 F.2d at 323 ("The preferred method is testimony by a [VE] which may be considered in conjunction with specific medical testimony. The [ALJ] may

thereupon evaluate the vocational capacity of a claimant to perform the available jobs and . . . a reviewing court can thereafter determine the existence or nonexistence of substantial evidence in support of [her] determination.").

The ALJ asked the VE questions regarding a hypothetical worker whose "pace of productivity is not dictated by an external source over which the claimant has no control, such as an assembly line or conveyor belt." Doc. [#19] at Pg ID 980. Plummer's lawyer then questioned if there was any production standard that the worker would have to meet if the work could not be dictated by an external source. *Id.* at Pg ID 964. The VE indicated that a worker whose pace was not set externally would still be required to be on task for 80 percent of the time and that the worker would still be required to complete the functions on a consistent base. *Id.* at Pg ID 965. The VE also clarified that a person who was unable to perform work at the necessary pace to complete the work would be off task and would be considered unemployable. *Id.* at Pg ID 965-66.

Plummer argues that the ALJ's decision is invalid because the hypothetical presented to the VE is essentially accommodated work, and thus is not evidence that she can perform competitive, gainful employment that exists in substantial numbers. *Id.* at Pg ID 981. Plummer reasons that, if her pace were not set by an external source, the pace she would go at would be inconsistent with competitive work. *Id.* As noted in the magistrate's report and recommendation, neither party

presented any case law regarding whether the phrase, "pace of productivity is not dictated by an external source over which the claimant has no control" is permissible. *Id.* The magistrate judge recommends that this phrase does not undermine the overall clarity and acceptability of the ALJ's hypothetical questions to the VE. *Id.* at 983. Plummer failed to raise any objection in any part of the report and recommendation in which she finds fault. As the Sixth Circuit has already explained, "[t]he filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review . . . ." *McClanahan*, 474 F.3d at 837 (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Here, Plummer did not present any objections to the magistrate's report and therefore the Court should follow the report and recommendation. *See Jones v. U.S. Dep't of Educ.*, 2017 WL 875297 at *2 (E.D. Mich. 2017) ("Because the plaintiff has failed to object to the report and recommendation in any meaning way, she has not persuaded the [c]ourt that it should upset the recommendation . . . .").

### 3. PLUMMER'S OTHER ARGUMENTS

Plummer presents two other arguments that do not fit into the two previous categories. One is that the ALJ erroneously concluded that she was off all of her medications, and the other is that the ALJ inconsistently gave "no weight" and significant weight to the State agency assessment. Again, there are no objections to the report or recommendation, and so the Court should follow the magistrate judge's recommendation saying that the ALJ was within their zone of choice to these relevant issues.

## IV.  CONCLUSION

Accordingly, the Plaintiff's objections 27are OVERRULED.The Court hereby  ACCEPTS AND ADOPTS  Magistrate Judge R. Steven Whalen's August 10, 2018 Report and Recommendation26, DENIES  Plaintiff's Motion for Summary Judgment (Doc. 17), GRANTS the Commissioner's Motion  (Doc. 24), OVERRULES Plaintiff's Objections [#27].


Dated: September 17, 2018                    s/Gershwin A. Drain
                                             U.S. District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 17, 2018.

+

s/Teresa McGovern
Case Manager Generalist